*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* C. K. D. CUMMINS, Minor.

UNPUBLISHED
July 24, 2026
9:40 AM

No. 377427
Oakland Circuit Court
Family Division
LC No. 2023-886583-NA

Before: MARIANI, P.J., and O'BRIEN and WALLACE, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating her parental rights to her minor son, CC, pursuant to MCL 712A.19b(3)(g) (failure to provide proper care and custody despite financial ability to do so), (i) (parental rights to child's sibling terminated due to serious and chronic neglect or abuse), and (j) (reasonable likelihood of harm if returned to parent). We affirm.

## I. BACKGROUND

Children's Protective Services (CPS) and the Department of Health and Human Services (DHHS) became heavily involved in respondent's life several years ago due to her issues with domestic violence, substance use, untreated mental health, unemployment, inadequate housing, and improper supervision and medical neglect of two of her other children (CC's older siblings).[1] Her parental rights to those children were involuntarily terminated in December 2018 as a result of her failure to comply with court-ordered services provided to rectify those issues.[2] In August 2023, a few weeks after CC's birth, DHHS petitioned to remove CC from respondent's care and terminate respondent's parental rights at initial disposition, alleging that CC had been born with

---

[1] Respondent gave birth to another child, AC, in November 2024 while these proceedings were ongoing. Respondent's parental rights to AC are not at issue in this appeal.

[2] The children were initially placed with, and eventually adopted by, their maternal aunt.

-1-

cocaine in his system and that respondent suffered from the same issues that led to the termination of her parental rights as to CC's two older siblings.

Following a preliminary hearing, the trial court authorized the petition, placed CC with his maternal aunt and two siblings, and suspended respondent's parenting time.[3]  Additionally, even though the authorized petition sought termination at initial disposition, the court ordered DHHS to make reasonable efforts and to prepare a case service plan (CSP) so that respondent had access to services and could voluntarily participate in them to address her issues.  DHHS obliged, providing referrals throughout the case so that respondent could participate in a variety of services meant to address her issues with untreated mental health, substance use, domestic violence, and parenting skills, and offering to assist respondent in obtaining consistent employment and appropriate housing.

The trial court conducted a combined adjudication and initial dispositional hearing in July 2024.[4]  Because DHHS petitioned for termination at initial disposition, the initial-dispositional portion of the hearing acted simultaneously as a termination hearing.  At the outset of the hearing, respondent pleaded to jurisdiction and to statutory grounds for termination so that she could proceed to a best-interests determination.  As the factual basis for her plea, respondent pleaded to all the allegations in an amended copy of the petition.[5]  Pursuant to the parties' agreement, the court also took judicial notice of the previous termination proceeding, including all documents filed therein.  After reviewing the petition once more and confirming that respondent understood the various rights she was giving up by entering a plea, the court accepted respondent's plea and entered an order exercising jurisdiction over CC, finding that the factual basis for the plea had sufficiently established statutory grounds to exercise jurisdiction over CC and had established, by clear and convincing evidence, statutory grounds for termination of respondent's parental rights pursuant to MCL 719.19b(3)(g), (i), and (j).  The court again ordered DHHS to continue to make reasonable efforts toward reunification so that respondent had access to useful services.

The trial court then moved to the best-interests portion of the hearing, which spanned across five days between January and September 2025.  At the conclusion of the best-interests hearing, after considering all the evidence and testimony provided by the parties, the trial court found that a preponderance of the evidence established that termination of respondent's parental rights was

---

[3] Per DHHS's recommendation, the trial court stated that it would reconsider the possibility of parenting time if respondent enrolled in a mental-health service and could provide at least three negative drug screens.  Respondent eventually did so, and DHHS began offering her supervised parenting time in August 2024.

[4] The hearing was originally set to occur in March 2024, but it was repeatedly adjourned for various reasons not relevant to this appeal.

[5] The petition was amended only to remove the allegation that MCL 712A.2(b)(4) (parent substantially failed to comply with a limited guardianship placement plan) served as a statutory basis for jurisdiction; the amended petition was otherwise identical to the original.

in CC's best interests. The court thereafter issued an order terminating respondent's parental rights as previously described. This appeal followed.

## II. REASONABLE EFFORTS

On appeal, respondent argues that DHHS failed to make reasonable efforts as ordered by the trial court[6] because DHHS, when providing services, made no effort to accommodate her intellectual disability as required under the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq*.

We ordinarily "review for clear error the trial court's factual finding that [DHHS] made reasonable efforts to reunify [a] respondent[] with the child." *In re Atchley*, 341 Mich App 332, 338; 990 NW2d 685 (2022). But because respondent did not object to the adequacy of the services provided—specifically, DHHS's compliance with the ADA when rendering services—this issue is unpreserved for appellate review. See *id*. at 337-338. We review unpreserved issues for plain error affecting substantial rights. *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704 (2020).

> To obtain appellate relief under the plain-error standard of review, a respondent first must show: (1) an error occurred, (2) the error was clear or obvious, and (3) the error affected substantial rights. Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings. After the respondent has satisfied these requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted when the plain, forfeited error seriously affected the fairness, integrity or public reputation of judicial proceedings. [*In re Berryman/Hurd/Morgan/Morgan-Hurd*, ___ Mich App ___, ___; ___ NW3d ___ (2026) (Docket Nos. 374775; 374776); slip op at 3-4 (quotation marks and citations omitted).]

In general, when a child is removed from a parent's custody, DHHS must make reasonable efforts toward reunification, except under certain, limited circumstances. *In re Walters*, ___ Mich

---

[6] We note that, as recognized by the trial court, DHHS was not required to make reasonable efforts toward reunification in light of the authorized petition for termination at initial disposition and respondent's subsequent plea, which established that respondent's parental rights to CC's two older siblings had been involuntarily terminated in 2018 and respondent still struggled with the same issues that led to the previous termination—i.e., domestic violence, substance use, untreated mental health, unemployment, inadequate housing, and parenting skills. See *In re Sanborn*, 337 Mich App 252, 260-262; 976 NW2d 44 (2021) (stating that DHHS need not make reasonable efforts "when a parent has his or her parental rights involuntarily terminated to a sibling of the child at issue and the parent has failed to rectify the conditions that led to that earlier termination of parental rights"); see also MCL 712A.19a(2)(c); MCR 3.977(E). The trial court nonetheless ordered DHHS to plan for reunification and adoption as concurrent permanency goals, and to correspondingly make reasonable efforts by creating a CSP and offering services to respondent so that she could voluntarily participate in them to rectify her ongoing issues. Accordingly, we address this issue as if reasonable efforts were required in this case.

App ___, ___; ___ NW3d ___ (2025) (Docket No. 369318); slip op at 3-4; see also MCL 712A.19a(2). Reasonable efforts include "creat[ing] a [CSP] outlining the steps that both [DHHS] and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Matamoros*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 371544); slip op at 4 (quotation marks and citation omitted). DHHS and the trial court must then continually review, update, and revise a parent's CSP as needed throughout the proceedings to ensure that a parent has "a meaningful opportunity to comply with" the CSP. *In re Mason*, 486 Mich 142, 156, 169; 782 NW2d 747 (2010). Although the ADA does not provide a defense to proceedings to terminate parental rights, *In re Terry*, 240 Mich App 14, 24-25; 610 NW2d 563 (2000), it does require DHHS to reasonably accommodate a disabled parent when providing services to achieve reunification and avoid termination of parental rights, *In re Hicks/Brown*, 500 Mich 79, 86; 893 NW2d 637 (2017), citing 42 USC 12132 and 28 CFR 35.130(b)(7). "[E]fforts at reunification cannot be reasonable under the Probate Code if [DHHS] has failed to modify its standard procedures in ways that are reasonably necessary to accommodate a disability under the ADA." *Hicks/Brown*, 500 Mich at 86.

As noted, respondent's reasonable-efforts argument focuses solely on DHHS's alleged failure to accommodate her intellectual disability when providing her with services. But DHHS "cannot accommodate a disability of which it is unaware," and it must have knowledge that a parent is disabled before it is required to provide reasonable accommodations for that disability under the ADA. *Id*. at 87. Here, beyond making conclusory assertions, respondent has not demonstrated that she suffers from an intellectual disability or that, even if she did, DHHS was aware of that disability at the time it was providing services to her. As her primary grounds for support, respondent emphasizes that the trial court, pursuant to her counsel's request, appointed her a guardian ad litem (GAL) in January 2024, thereby recognizing her limited intellectual capacity. A trial court may, under MCR 3.916(A), appoint a GAL to a party of the proceedings if it finds it necessary to do so for the party's welfare, and the record makes clear that respondent's counsel requested, and the trial court appointed, a GAL to respondent due to untreated mental-health concerns that were impacting her behavior at hearings. The record does not, however, indicate that these mental-health concerns and ensuing behavioral issues were tied to or reflective of an intellectual disability within the scope of the ADA. Respondent also emphasizes that her September 2024 psychological evaluation indicated that her verbal intelligence was low, but neither the psychological evaluation nor the evaluator diagnosed respondent with any cognitive or intellectual disabilities requiring ADA accommodations. The evaluator further clarified during her testimony at the best-interests hearing that the test results upon which that statement was based were ultimately deemed invalid and could not be relied upon.

Furthermore, and more fundamentally, "when challenging the services [being] offered," the burden is on the parent to identify other "services that would have been appropriate in light of such disability or how the services offered were deficient" and to demonstrate that he or "she would have fared better if other services had been offered." *In re Sanborn*, 337 Mich App 252, 266-267; 976 NW2d 44 (2021). Respondent has not done so in this case. Other than asserting that she "needed extra help," respondent has not identified exactly what other services DHHS should have provided in light of her asserted disability. See *id*. at 264, 266-267. Nor does she explain how the services DHHS actually offered to her—which included referrals for a psychological evaluation, mental-health counseling, domestic-violence counseling, random drug screenings,

substance-abuse treatments, and parenting education, as well as offers to assist respondent in obtaining housing, employment, and additional financial assistance to subsidize her housing costs—were deficient or how she would have fared better had DHHS offered additional services or accommodations. See *id*. Rather, the record reflects that DHHS provided referrals for a multitude of services to address respondents' issues—several of which respondent at least partially participated in—but that respondent simply failed to uphold her "commensurate responsibility" to cooperate with, engage in, and benefit from the services offered by DHHS. *Atchley*, 341 Mich App at 339 (quotation marks and citation omitted). Accordingly, respondent has not shown that the trial court reversibly erred when it determined that DHHS made reasonable efforts toward reunification. See *Sanborn*, 337 Mich App at 266-267; *Pederson*, 331 Mich App at 463.

## III. BEST-INTERESTS DETERMINATION

Respondent also argues that the trial court erred by finding that termination of her parental rights was in CC's best interests. We review for clear error a trial court's determination regarding a child's best interests. *In re Olive/Metts Minors,* 297 Mich App 35, 40; 823 NW2d 144 (2012). Clear error exists when the "reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *Id*. at 90.

When determining whether termination is in the best interests of the child, the court should place its "focus on the child rather than the parent." *In re Mota*, 334 Mich App 300, 321; 964 NW2d 881 (2020). "The trial court should weigh all the evidence available to determine the child's best interests," and it should consider a variety of factors, including "the child's bond to the parent; the parent's parenting ability; the child's need for permanency, stability, and finality; and the advantages of a foster home over the parent's home." *In re Simpson*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368248); slip op at 5 (quotation marks, citations, and alterations omitted). "Other factors that the court may consider include the parent's history, the parent's psychological evaluation, the age of the child, and a parent's substance-abuse history." *In re MJC*, 349 Mich App 42, 62; 27 NW3d 122 (2023) (citations omitted). The court may also consider the parent's ability to provide the child a safe and permanent home, "the parent's visitation history with the child, the child's well-being while in care, and the possibility of adoption," *id*. (quotation marks, citation, and alteration omitted), as well as "how long the child was in foster care or placed with relatives, along with the likelihood that the child could be returned to the parents' home within the foreseeable future, if at all," *In re CJM*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367565); slip op at 4 (quotation marks and citation omitted). The court must also expressly consider a child's placement with a relative, which ordinarily weighs against termination. *Id*. at ___; slip op at 4.

According to respondent, the trial court's best-interests findings were clearly erroneous because the court failed to adequately account for the parent-child bond between respondent and CC and for her progress in her services. The record before us belies this claim.

In its findings, the trial court expressly stated that it had considered whether and to what extent there was a parent-child bond between respondent and CC, concluding that the evidence

demonstrated that no such bond existed. As support for this finding, the court emphasized respondent admitted to a psychologist that she and CC "did not know one another" and that CC "was more attached to his foster mother than to her," that the psychologist "opined no bond existed," and that the caseworker testified that CC had a strong bond with his relative placement and "looked to [his] foster parent for comfort, affection, and needs." The evidence supported this conclusion, as the psychologist's testimony and written psychological evaluation for respondent both indicated that respondent made such admissions to her. Additionally, the caseworker testified that CC was strongly bonded with his relative placement, that CC looked to that placement for all of his needs, and that CC typically turned to DHHS supervisors, rather than respondent, for comfort and guidance during respondent's supervised parenting times.

In its findings, the trial court also discussed respondent's progress at length and expressly stated that it considered that progress in its determination, noting that respondent's ability "to establish housing separate from [her abusive long-term partner] was a significant accomplishment for" her but that she "failed to demonstrate any meaningful and lasting progress," particularly as it related to her mental health, substance use, and parenting ability. The court further found that respondent's minimal progress since her 2018 termination case "d[id] not outweigh the [best-interests] focus . . . on the child" and demonstrated that she was unlikely to rectify these issues within a reasonable amount of time given CC's young age and how long he had been in his relative placement's care.[7]

The evidence supported this conclusion, as testimony and documentary evidence established that respondent refused to participate in any of the recommended parenting-education courses; was still using and testing positive for substances; was not consistently participating in mental-health treatments and therefore had not addressed her mental-health issues; and was still in a relationship with her long-term partner at the time of the hearing, despite having completed a domestic-violence course and even though he was selling, and providing her with, drugs. Respondent was unable to participate in supervised parenting time for more than a year because she repeatedly tested positive for substances, and even after she was offered parenting times, she inconsistently attended and CC generally avoided engaging with her. Additionally, respondent acquired employment and suitable housing during the proceedings, but at the time of termination, she was unemployed and three months behind on rent. And, as the trial court noted, these issues have been ongoing since 2018, and the caseworker and the psychologist both testified that respondent was no closer to rectifying her issues than she was in 2018 and had too much instability in her own life to be able to provide the stability in CC's life that he needed. Although respondent testified to the contrary, the court did not find respondent's testimony to be credible because it was inconsistent and because respondent "tried to answer questions to present herself in a better light." We see no basis to disrupt that credibility assessment here. See *Moss*, 301 Mich App at 80.

In sum, the record reflects that the trial court properly weighed all the evidence available to it at the time that it made its best-interests determination, *Simpson*, ___ Mich App at ___; slip

---

[7] The court also duly considered this relative placement as weighing against termination, but found that the evidence as a whole demonstrated that termination was in CC's best interests. See *CJM*, ___ Mich App at ___; slip op at 4.

op at 5, and we see no clear error in its findings, *id*. at ___; slip op at 3. While respondent may disagree with how the trial court ultimately weighed the parent-child bond and her progress in rectifying her issues against the many other considerations relevant to CC's best interests, she has not shown any reversible error in that regard. See *id*. at ___; slip op at 3, 5.

Affirmed.

/s/ Philip P. Mariani
/s/ Colleen A. O'Brien
/s/ Randy J. Wallace